Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Michelle S. Lim (SBN 315691)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiff, the Putative Classes
and Collective

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CERTIFIEDSAFETY, INC.;  SHELL OIL COMPANY; and SHELL OIL PRODUCTS COMPANY LLC; <br><br> Defendants. | Case No. _____ <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> (1) **Violations of the Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq.*)** <br> (2) **Failure to Pay for All Hours Worked (Cal. Labor Code § 204);** <br> (3) **Failure to Pay Minimum Wage & Liquidated Damages (Labor Code §§ 1182.11, 1182.12, 1194,1197, and 1197.1)** <br> (4) **Failure to Pay Overtime Wages (Cal. Labor Code § 510);** <br> (5) **Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Labor Code §§ 226.7 and 512);** <br> (6) **Failure to Reimburse for Necessary Business Expenditures (Cal. Labor Code § 2802);** <br> (7) **Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Labor Code § 226);** <br> (8) **Waiting Time Penalties (Cal. Labor Code §§ 201-203);** <br> (9) **Failure to Pay Minimum Wage (RCW 49.46.090, RCW 49.12.150);** <br> (10) **Failure to Pay Overtime Wages (RCW 49.46.130);** <br> (11) **Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (RCW 49.12.020);** <br> (12) **Failure to Pay Unpaid Wages on Termination (RCW 49.48);** <br> (13) **Willing Refusal to Pay Wages (RCS** |

49.52.050);
(14) **Violations of the Washington's Consumer Protection Act (RCW 19.86);**
(15) **Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);**
(16) **Penalties Pursuant to § 2699(a) of the California Private Attorneys General Act; and**
(17) **Penalties Pursuant to § 2699(f) of the California Private Attorneys General Act**

**DEMAND FOR JURY TRIAL**

1

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Harold Jones ("Jones" or "Plaintiff"), on behalf of himself and all others similarly situated, complains and alleges as follows:

**INTRODUCTION**

1.     Plaintiff brings this class and collective action on behalf of himself and other similarly situated individuals who have worked for CertifiedSafety, Inc. ("CertifiedSafety"); Shell Oil Company; and Shell Oil Products Company LLC (collectively, "Shell;" CertifiedSafety and Shell are collectively referred to as "Defendants") as non-exempt, hourly employees, including Safety Attendants and Safety Foremen. CertifiedSafety and Shell employ Plaintiff and putative Class and Collective members as joint employers. Plaintiff challenges CertifiedSafety's and Shell's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California and Washington wage and hour laws.

2.     This is a class action against Defendants to challenge their policies and practices of: (1) failing to compensate Plaintiff and putative Class and Collective members for all hours worked; (2) failing to pay Plaintiff and putative Class and Collective members minimum wage for all hours worked; (3) failing to pay Plaintiff and putative Class and Collective members overtime and double time wages; (4) failing to authorize and permit Plaintiff and the putative Class members to take meal and rest breaks to which they are entitled by law and pay premium compensation for missed breaks; (5) failing to reimburse Plaintiff and putative Class and Collective members for necessary business expenditures; (6) failing to provide Plaintiff and putative Class members accurate itemized wage statements; and (7) failing to timely pay Plaintiff and putative Class members wages upon the termination of employment.

3.     Plaintiff and members of the putative Class and Collective are current and former non-exempt, hourly Safety Attendants and Safety Foremen, who worked for Defendants throughout the United States, including but not limited to California and Washington.  These employees provide support for Defendants' operations, including but not limited to safety supporting operations and protocols, and identifying, mitigating, and reporting potential safety hazards at

Defendants' worksites.

4.     Plaintiff and putative Class and Collective members work long hours.  Plaintiff and putative Class and Collective members are regularly scheduled to work, and in fact work, twelve hour shifts for seven or more consecutive days.  Beyond the scheduled hours for which Plaintiff and putative Class and Collective members are scheduled to work, Plaintiff and putative Class and Collective members are also required to work before and after scheduled shifts, without compensation.  Additionally, Plaintiff and putative Class and Collective members are required to attend day-long or multi-day training sessions, and are not compensated for their time spent in these trainings or for their time traveling to the training sites.

5.     Defendants assign Plaintiff and putative Class and Collective members to work at specific refineries for periods ranging up to several months. Defendants initiate contact and enter into employment agreements with Class and Collective members in their home states, including California, to arrange the assignments and related training.  This is true even for assignments outside Class and Collective members' home states.

6.     CertifiedSafety and Shell jointly require Plaintiff and putative Class and Collective members to attend training in California.  Putative Class and Collective members are required to attend training in the State of California before job assignments, even when the job assignment was to take place outside the State of California.  The pre-assignment training is controlled, dictated, and conducted by the particular refinery, including Shell, can last up to an entire day, and is required by Defendants. Moreover, CertifiedSafety and Shell jointly negotiated and consummated employment agreements with Plaintiff within the State of California for each assignment. On this basis, an employment relationship exists in California between Plaintiff, putative California Class members, and Defendants. Defendants, however, do not compensate Class and Collective members for all of their time spent in pre-assignment training, or the time it takes Class and Collective members to travel to training sessions.

7.     Following pre-assignment training, Plaintiff and putative Class and Collective members travel to work locations at the designated refinery, often far from home and out of state,

without adequate reimbursement.  Defendants set the terms for this inadequate reimbursement.

8.     Once Plaintiff, Class, and Collective members  report to and begin their work assignments, Plaintiff and putative Class and Collective members are not paid minimum wage for all hours worked, overtime rates or double time rates, as appropriate, for all hours worked above eight per day and forty per week.  Plaintiff and putative Class and Collective members are also routinely denied meal and rest periods.  Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they actually work and the amount of wages and overtime to which they are entitled and for which they should be compensated.  Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

9.     Plaintiff and putative Class and Collective members must also pay work expenses out of pocket, without adequate reimbursement.  For example, Plaintiff and the putative Class and Collective are not reimbursed for tools and protective gear necessary to safely complete their jobs. Further, while Plaintiff and putative Class and Collective members may receive a per diem to mitigate the cost of lodging and other work related expenses when working at refinery sites far from home, the amount allocated is regularly insufficient to cover all these expenses. Plaintiff and Class and Collective members are not adequately compensated for travel expenses to and from worksites.

10.     As a result of these violations, Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the FLSA, as well as the wage, hour, labor, and other applicable laws of the States of California and Washington, as described herein.

11.     Plaintiff seeks full compensation on behalf of himself and all others similarly situated for all unpaid wages, including overtime and double time, all denied meal and rest periods, unreimbursed business expenses, inaccurate wage statement penalties, waiting time penalties, and penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").

12.     Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution.

13.     Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA and applicable laws of the States of California and Washington, as described herein.

**PARTIES**

14.     Plaintiff and putative Class and Collective members are current and former Safety Attendants and Safety Foremen who work for Defendants throughout the United States, including but not limited to the States of California and Washington.

15.     Plaintiff is an individual over the age of eighteen, and at all times mentioned in this Complaint was a resident of the State of California.  Plaintiff was employed by CertifiedSafety as a Safety Attendant from 2011 to 2017.

16.     Plaintiff is informed, believes, and alleges that CertifiedSafety is an American company that provides skilled safety personnel to clients operating oil refineries.  CertifiedSafety provides services to clients with oil refineries throughout the United States, including California and Washington. CertifiedSafety maintains its headquarters in League City, Texas, and does business throughout California and Washington.  Plaintiff is further informed, believes, and thereon alleges that CertifiedSafety employs hourly, non-exempt Safety Attendants and Safety Foreman throughout the United States, including in California and Washington.

17.     Plaintiff is informed, believes, and alleges that Defendant Shell Oil Company is an American corporation that refines and markets petroleum products. Shell Oil Company is the United States-based wholly owned subsidiary of Royal Dutch Shell plc, a British-Dutch multinational oil and gas company headquartered in the Netherlands and incorporated in the United Kingdom. On information and belief, Shell Oil Company operates oil refineries in California, Washington, and the United States, where Plaintiff and the putative Class and Collective members work in safety roles. Shell Oil Company maintains its headquarters in Houston, Texas, and does business in California and Washington. Plaintiff worked for CertifiedSafety and Shell Oil Company as joint employers at one or more Shell refineries in California from approximately May 2016 to June 2016, April 2017, and September 2017. Plaintiff worked for CertifiedSafety and Shell Oil Company as joint employers at one or more Shell refineries in Washington in approximately October 2017.

18.     Plaintiff is informed, believes, and alleges that Defendant Shell Oil Products Company LLC is an American company that refines and markets petroleum products. On information and belief, Shell Oil Products Company LLC is a related entity to Shell Oil Company. On information and belief, Shell Oil Products Company LLC operates oil refineries in California, Washington, and the United States, where Plaintiff and the putative Class and Collective members work in safety roles. Shell Oil Products Company LLC maintains its headquarters in Houston, Texas, and does business in California and Washington. Plaintiff worked for CertifiedSafety and Shell Oil Products Company LLC as joint employers at one or more Shell refineries in California from approximately May 2016 to June 2016, April 2017, and September 2017. Plaintiff worked for CertifiedSafety and Shell Oil Products Company LLC as joint employers at one or more Shell refineries in Washington in approximately October 2017.

19.     At all relevant times, Defendants have done business under the laws of the United States, including California and Washington, as well as within this judicial district.  Defendants, and each of them, have employed Plaintiff and putative Class and Collective members in California, and within in this judicial district.   At all relevant times, Defendants have been Plaintiff's "employer" within the meaning of the FLSA, California, and Washington law.

## JOINT EMPLOYER ALLEGATIONS

20.     Plaintiff is informed and believes that CertifiedSafety and Shell are or were the joint employers of Plaintiff and members of the putative Classes and Collective for purposes of this action under the FLSA, and California and Washington wage and hour laws.

21.     Beginning with training, Shell and CertifiedSafety jointly require members of the Classes and Collective to attend mandatory, uncompensated training in the member's home state. Defendants jointly control, dictate, and conduct this training. Plaintiff was required to attend mandatory, uncompensated training for one more Defendants in the State of California.

22.     Following training, Defendants control the day-to-day work experiences for these workers. Plaintiff and members of the Classes and Collective are typically assigned for extended

periods to particular refineries, including Shell (up to several months), where they work closely with and under the supervision of refineries' employees.

23.    When Plaintiff and members of the putative Classes and Collective work at a particular oil refinery, they are employed by CertifiedSafety and the company or companies that own(s) and/or operate(s) the refinery as joint employers, including Shell. For example, when Plaintiff worked at the Shell Martinez Refinery in Martinez, California, he was jointly employed by CertifiedSafety and Shell.

24.    Plaintiff is informed and believes that the acts and omissions alleged herein were performed by, and/or attributable to, CertifiedSafety and Shell each acting as agents and/or employees, and/or under the direction and control of each of the other, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

25.    Plaintiff is informed and believes, and thereon alleges, that Shell controls and/or supervises, directly and/or indirectly, the work of Plaintiff and members of the putative Classes and Collective.

26.    Specifically, CertifiedSafety's refinery clients, including Shell: (1) determine the job duties to be performed by Plaintiff and members of the putative Classes and Collective; (2) determine the work schedules and shifts for Plaintiff and members of the putative Classes and Collective; (3) determine the safety procedures followed by Plaintiff and members of the putative Classes and Collective; (4) maintain a timekeeping process and track the working hours of Plaintiff and members of the putative Classes and Collective; (5) set the rate of pay for Plaintiff and members of the putative Classes and Collective working at the oil refinery locations; (6) make all decisions concerning reimbursement for travel costs and per diems to Plaintiff and members of the putative Classes and Collective; (7) set the budget of labor hours for each project; (8) conduct all pre-project training for each work assignment; and (9) make the decision to withhold compensation time spent in mandatory training.

27.    CertifiedSafety's refinery clients, including Shell, direct and monitor every aspect of the daily work of Plaintiff and members of the putative Classes and Collective, including the job

1    duties and scope of jobs. The refineries, including Shell, control day-to-day activities, specifying

2    how each particular task is to be performed. The refineries, including Shell, dictate exact procedures

3    and protocols for each job assignment, including but not limited to fire watching (monitoring

4    welding with a fire extinguisher or water hose to mitigate fire hazards), traffic flagging, and hole

5    watching (ensuring the safety of a co-worker in a confined space), and specify and provide the

6    equipment that is to be used. The refineries, including Shell, set the paperwork requirements that

7    must be completed to document each task. The refineries, including Shell, make specific work

8    assignments for each member of the putative Classes and Collective, dictating which task(s) they

9    will complete and where they will work at the refinery sites. The refineries, including Shell, dictate

10   where Plaintiff and members of the putative Classes and Collective must park their vehicles when

11   they arrive at the refinery, where they must enter the refinery, and where and when they must use a

12   shuttle to travel around the refinery.

13       28.    Upon information and belief, CertifiedSafety's refinery clients, including Shell, also

14   require Plaintiff and members of the putative Classes and Collective to comply with additional

15   training requirements, beyond pre-assignment trainings. Shell requires completion of specific

16   training sessions, unilaterally provides these trainings to Plaintiff and members of the putative

17   Classes and Collective, and decides whether the trainings are paid.

18       29.    CertifiedSafety's refinery clients, including Shell, unilaterally set the schedule, shifts,

19   and hours worked by Plaintiff and members of the putative Classes and Collective. The refineries,

20   including Shell, determine when these workers can clock in, when they can take a meal break or

21   rest break (if at all), and when they can clock out. The refineries, including Shell, dictate when they

22   can use the restroom. The refineries, including Shell, set the schedules, shifts, and hours worked

23   for Plaintiff and members of the putative Classes and Collective so that their work coincides with

24   the schedules, shifts, and hours worked for the refineries' in-house employees. The refineries,

25   including Shell, require Plaintiff and members of the putative Classes and Collective to perform

26   pre-shift and post-shift work off-the-clock and without pay, and require these workers to work or

27   remain under employer control during meal and rest breaks.

28

30.     The refineries, including Shell, impose detailed safety protocols for Plaintiff and members of the putative Classes and Collective for each project. The refineries, including Shell, unilaterally determine the safety procedures for the work performed. The refineries, including Shell, have mandatory safety trainings and set the specific requirements for each task to be done in a safe manner. The refineries, including Shell, dictate the amount and level, as well as types, of personal protective equipment Plaintiff and members of the putative Classes and Collective are required to use. The refineries, including Shell, specify when the safety equipment can be donned and doffed.

31.     The refineries, including Shell, maintain a timekeeping process and track the hours worked by Plaintiff and members of the putative Classes and Collective. The refineries, including Shell, require Plaintiff and members of the putative Classes and Collective to badge in-and-out of the refinery sites, using the refineries' badging systems. With this badging system, the refineries, including Shell, monitor and track the hours worked and the precise movements of members of the putative Classes and Collective throughout the massive refinery operations.

32.     The refineries, including Shell, have the power, directly and indirectly, to determine and set the rate of pay for Plaintiff and members of the putative Classes and Collective. The refineries, including Shell, determine, approve, and cap the reimbursement amount paid to Plaintiff and members of the putative Classes and Collective for travel. The refineries, including Shell, determine whether jobs are classified as "commute" jobs, which controls whether Plaintiff and members of the putative Classes and Collective are reimbursed for lodging and meals. The refineries, including Shell, alone determine and set the rate of per diem to cover lodging and meals expenses. The refineries, including Shell, also determine Plaintiff's and putative Classes and Collective members' compensation, if any, for time they spend taking shuttles from location to location within the refinery sites.

33.     The refineries, including Shell, maintain a high degree of control over Safety Attendant and Safety Foreman staffing for each oil refinery location, determining the number of labor hours and staffing levels required to perform a project. The refineries, including Shell, require CertifiedSafety to perform work within the labor hours budgeted by the refineries. The refineries,

1  including Shell, specify the staffing, labor budgeting, and labor hours in their contracts with

2  CertifiedSafety.

3      34.    As employers of Plaintiff and members of the putative Classes and Collective

4  throughout the relevant time periods as outlined below, Defendants, and each of them, are solely,

5  jointly, and severally liable for back pay and other economic damages, including statutory penalties,

6  owed to Plaintiff and members of the putative Classes and Collective under common law and by

7  statute.

8      35.    Throughout this Complaint, any reference to the "Defendant" or to "Defendants" is

9  intended to refer to CertifiedSafety and Shell, jointly as employers.

10     36.    Defendants' annual gross sales exceed $500,000.

11  **JURISDICTION AND VENUE**

12     37.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §

13  1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

14  U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

15     38.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial

16  part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

17     39.    Defendants, and each of them, employed Plaintiff, Class, and Collective members in

18  the State of California.  Defendants communicated with Plaintiff and other California Class and

19  Collective members while they were in California, and induced them to enter into employment

20  relationships and travel to the refinery locations throughout the United States, including California.

21  Plaintiff and putative Class and Collective members in California enter into employment

22  agreements with Shell in California.  And even when work to be performed at refinery sites was

23  outside of California, Shell has required Plaintiff and putative Class and Collective members in

24  California to complete training in California. Thus, Shell has required Plaintiff and putative Class

25  and Collective members in California to work in California, and have controlled and dictated the

26  terms of such work. On this basis, an employment relationship exists in California between Plaintiff

27  and putative California Class and Collective members in California and each of the Defendants.

28

## EQUITABLE TOLLING

40.     The limitations period applicable to Plaintiff's individual claims, as well as the claims of putative Class and Collective members, against Defendants was tolled from April 21, 2017 until the date Plaintiff first initiated this action by the pendency of the class action claims in the related case of *Harold Jones, et al. v. CertifiedSafety*, Northern District of California, Court Case Number 3:17-cv-02229-EMC (filed April 21, 2017).

## FACTUAL ALLEGATIONS

### Defendants and their Safety Attendant Employees

41.     CertifiedSafety works with refineries, including Shell, to provide skilled personnel who specialize in planning, implementing, and executing safety protocols for refinery operations. CertifiedSafety provides services throughout the United States, including but not limited to California and Washington. These workers are the Plaintiff, Classes, and Collective at issue in this case (hereinafter referred to as "Safety Attendants").

42.     Plaintiff works for Defendants as Safety Attendants.[1] Plaintiff's primary duties include, but are not limited to: monitoring and recording air pressure to ensure that oxygen levels are safe for other workers at the refinery site; cleaning and organizing the refinery site; monitoring and recording the amount of employees entering and exiting the work site; and supervising hot work to prevent combustion near refinery sites.

43.     Plaintiff, Class, and Collective members are classified as hourly, non-exempt employees and are paid an hourly rate for their services.  Plaintiff worked at various work sites operated by clients of CertifiedSafety throughout the United States, including but not limited to California, and Washington.

44.     Defendants dispatch Safety Attendants to various locations throughout the United States, including in California and Washington. For each assignment, Defendants determine the hourly rate to be paid and the duration of the project.

---

[1] While Plaintiff is a former employee of Defendants, for ease of reading, allegations are presented in the present tense.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

1

**Training Required of Safety Attendants**

2          45.    These sophisticated job duties require training.  CertifiedSafety requires its Safety

3    Attendants to undergo mandatory training that consists of two eight-hour days at the beginning of

4    their employment, as well as an additional eight-hour day of continuing training each year.  In

5    addition to learning about the responsibilities of the Safety Attendant position, this training provides

6    information on specific CertifiedSafety policies and procedures, such as its meal and rest break

7    policies, cell phone policies, CertifiedSafety's Code of Conduct, as well as CertifiedSafety's sexual

8    harassment and discrimination policies, just to name a few.  This training is described as an

9    "orientation" to Safety Attendants' employment with CertifiedSafety, where Safety Attendants fill

10   out "new hire" paper work such as I-9s and W-4s.  This training is important to CertifiedSafety's

11   ability to market its services to the oil and drilling industry, because CertifiedSafety represents that

12   *its* Safety Attendants go through this significant training. As a matter of policy, none of this training

13   time is compensated, nor are Safety Attendants reimbursed for any expenses relating to this

14   mandatory training.

15         46.    Upon information and belief, Defendants also require Safety Attendants to undergo

16   training before each job assignment, typically no more than one day of eight hours.  These pre-

17   assignment trainings are conducted by the refineries, including Shell, and refineries are responsible

18   for the content and duration of said training. Safety Attendants' ability to accept the assignment is

19   conditioned on their completion of the training. These pre-assignment trainings cover specific

20   topics and issues that the workers will encounter in the particular assignment, and are conducted

21   near the home of the Plaintiff and putative Class and Collective members, prior to their dispatch to

22   the applicable refinery site. The refineries, including Shell, required Plaintiff to complete pre-

23   assignment trainings in California, typically in Benicia. On information and belief, other putative

24   Class and Collective members in California are required to complete pre-assignment training in

25   California prior to their dispatch by Defendants. As a matter of policy, none of this training time is

26   compensated, nor are Safety Attendants reimbursed for any expenses relating to this mandatory

27   training.

28

47.    Defendants also require Plaintiff and putative Class and Collective members to complete additional training at the refinery locations during assignments.    This time is not compensated.

### A Typical Day for Safety Attendants

48.    Safety Attendants work long hours – typically working twelve hours a day for thirteen consecutive days, followed by one day off, and then another thirteen consecutive days of twelve-hour shifts.    Safety Attendants typically work this schedule until a given project is complete, which generally lasts between one and three months.

49.    Safety Attendants generally work one of two twelve-hour shifts in a twenty-four hour period.    For example, one group of Safety Attendants may be scheduled to work from, for example, 7:00 a.m. to 7:00 p.m., and another group of Safety Attendants is scheduled to work from 7:00 p.m. to 7:00 a.m. These schedules are not set by CertifiedSafety, but by the refineries, including Shell, which CertifiedSafety is contractually obligated to implement. But regardless of which shift Safety Attendants work, the job duties and responsibilities are the same, as is the process for reporting to work, beginning the workday, taking meal and rest breaks, and ending the workday.

50.    Safety Attendants' days begin with a daily commute from their hotel room to a parking lot.[2] Depending on the facility, the parking lot may be on site or off site.  If the parking lot is off site, Safety Attendants will park their car and put on their fire-retardant protective gear.  This protective gear uniformly includes fire-retardant coveralls or fire-retardant jacket and pants, steel-toe boots, hard hat, earplugs, safety goggles, and gloves. The donning process typically takes between five and twenty minutes. Once they have donned their protective gear, Safety Attendants must wait for a shuttle that transports them to the facility's security gate. The process of waiting for a shuttle and then and being transported to the facility takes between fifteen and thirty minutes. When the parking lot is on site, Safety Attendants must park and observe the same donning process; however, instead of taking a shuttle to the security gate, Safety Attendants must traverse a large parking lot on foot, after donning their protective gear, to the security gate.  For on-site parking

---

[2] More often than not, Safety Attendants work at remote locations requiring considerable travel and temporary living arrangements.

facilities, the pre-security gate process takes between fifteen and thirty minutes.

51.     Once they have arrived at the facility, donned their protective gear, and traveled to the security gate, Safety Attendants go through a security check.  This requires Safety Attendants to wait in line while security inspects bags and ensures Safety Attendants are wearing all required protective equipment.   Indeed, according to Occupational Safety and Health Administration ("OSHA") requirements, Safety Attendants are not permitted to enter a facility unless they are wearing their protective gear.  *See* 29 CFR 1910.132. This process takes between five and fifteen minutes. After Safety Attendants pass through security, they swipe a badge that confirms their right to access to the facility and electronically documents the time in which they passed through security. Safety Attendants report that to comply with Defendants' scheduling and pre-shift activity requirements, they must have passed through the security gate and badged in at least thirty minutes before their scheduled start times.

52.     Once Safety Attendants go through the security check, they either walk or take a shuttle to another location at the facility which typically has a lunch tent or trailer, as well as a supervisor's trailer. This process takes between five and ten minutes.  Once at this location, Safety Attendants drop off their lunches, obtain and begin to fill out paperwork relating to their workday, gather equipment, and receive their job assignments for the day.  Often, the equipment Safety Attendants need for the day is not at that particular location, and they will have to walk to a different part of the facility to obtain the necessary equipment.  This equipment ranges from simple (e.g., hammers and brooms) to sophisticated (e.g., respirators, H2S monitors, gas monitors) and everything in between (e.g., fire extinguishers, radios, and gas masks). While at the lunch/supervisor trailers, Safety Attendants also attend mandatory daily safety meetings that last approximately five to ten minutes.  All totaled, Safety Attendants spend approximately thirty minutes engaged in these activities once they arrive at the lunch/supervisor trailers.

53.     At some point during the day (but not necessarily when Safety Attendants first report to their supervisors for the day), their supervisors document **a** start time on Technicians' time sheets – either by writing down that start time themselves, or by directing Safety Attendants to write down

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

a specific start time, regardless of what time Safety Attendants *in fact* began working, and indeed, regardless of what time it actually is when the start time is created. Instead, Safety attendants are instructed to write down their scheduled start time, which does not account of any of the above-described pre-shift activity, but denotes the time at which Safety Attendants were scheduled to start working and expected to be at their post performing their assigned safety duties. Indeed, CertifiedSafety admits that, as a matter of the refineries' policies, including Shell's, it is Defendants' expectation that Safety Attendants will only be clocked in for scheduled work time. Notably, the time sheets for Plaintiff and other Safety Attendants typically show Safety Attendants all beginning their day at the exact same time, and almost always on a round number, e.g., 6:30 a.m. or 7:00 a.m.

54.    At this point, Safety Attendants leave the lunch/supervisor trailer location and walk to their job post for the day. When at a post, Safety Attendants perform essential safety functions requiring constant attention. For example, when on fire watch and monitoring a welding team, Safety Attendants ensure no smoldering fires result from cutting or welding metal. Safety Attendants on hole watch ensure the safety of the person working in a confined space, while monitoring and recording air pressure to ensure oxygen levels are safe. The role of the Safety Attendant, and the constant attention demanded by the position, is an essential part of industrial maintenance safety programs.

55.    As a result of these demanding responsibilities, Safety Attendants rarely, if ever, are permitted to take meal and rest breaks. This is for several reasons. First, Safety Attendants are *always* required to carry their radios, and are *always* on call. It is Defendants' expectation that Safety Attendants always answer calls from their supervisors at any time. Thus, no meal or rest break is ever duty-free.

56.    Second, and with respect to meal breaks, food may not be eaten except in designated locations – typically the lunch tent. However, walking from a job post to the lunch tenth takes *at least* ten to fifteen minutes. This travel time is included within their thirty-minute meal breaks. Because this travel time is included in the thirty-minute meal period, any lunch Safety Attendants

1  take consists of nothing more than a couple minutes to quickly eat some food, sandwiched in

2  between walking to and from the lunch tent for the vast majority of their thirty minute break.

3       57.    Third, OSHA requirements, as well as Defendants' requirements, insist that much of

4  the work performed at these facilities be monitored by Safety Attendants.  Thus, Safety Attendants

5  cannot abandon the crews under their supervision unless another Safety Attendant relieves them

6  (which rarely occurs), regardless of whether it is time to take a meal or rest break.  This often results

7  in meal and rest breaks never being taken, and to the extent such breaks are even attempted, they

8  are not timely. Fourth, and relatedly, Safety Attendants are constantly called on their radios

9  whenever they attempt to take a break, because the crew under their supervision needs to resume

10  working.

11       58.    Despite the fact that Safety Attendants rarely (if ever) take meal or rest breaks,

12  Defendants automatically deduct thirty minutes from Safety Attendants' pay as an uncompensated

13  meal period.  Defendants have no policies, procedures, or practices to ensure meal and rest breaks

14  are being taken.  Indeed, with the exception of California, CertifiedSafety admitted that Defendants

15  did nothing to track or even mark on timesheets whether meal periods were taken until the Fall of

16  2017 – a change that was admittedly triggered by the *Harold Jones, et al. v. CertifiedSafety*, Case

17  No. 3:17-cv-02229-EMC, lawsuit.  Instead, at the end of work shifts, Defendants' supervisors,

18  foreman, and managers instruct Safety Attendants to write that they took a meal break at a specific

19  time – typically at the four and a half hour mark in their shift.  Notably, CertifiedSafety's records

20  show that Safety Attendants apparently took meal breaks at the exact same time – often right at the

21  four and a half hour mark in their shift – and that time just so happens to be a round number, e.g.,

22  11:00 p.m. or 11:30 p.m.

23       59.    When shifts are scheduled to end, Safety Attendants may not leave their post until

24  another Safety Attendant relieves them.  This typically does not occur until after their scheduled

25  end times, and Safety Attendants frequently work fifteen minutes to an hour past their scheduled

26  end times waiting for relief.  Nevertheless, Safety Attendants are expected to clock out when their

27  shift is scheduled to end, regardless of when they stopped working.

28

60.     At the end of a shift, and once they are relieved by another Safety Attendant and debrief with that individual, Safety Attendants walk back to the lunch/supervisor trailer area.  This walk takes anywhere from ten to thirty minutes. Once at the lunch/supervisor trailers, they return their equipment, complete and submit their paperwork for the day, and sign out with their supervisor or foreman.  Safety Attendants do not write down the actual end time, but instead are instructed by Defendants' supervisors and foremen to write down a specific time, or, said supervisors and foremen write down this time themselves – a time that usually is the same as their scheduled end times, even though the actual end time is much later.  Notably, Defendants' managers, foremen and supervisors even use white out or erasable pens to alter time records when Safety Attendants do not report times as instructed.  This applies to start and end times, as well as uncompensated meal periods.

61.     Once Safety Attendants sign out for the day, they observe the same process as their pre-shift activity.  This includes walking or shuttling from the lunch/supervisor trailers to the security gate, going through a security check, walking or shuttling to their car, and doffing their equipment.

62.     All totaled, Safety Attendants work between one hour and fifteen minutes to two and a half hours off-the-clock every day – *not including thirty minutes daily for uncompensated meal periods that were never provided.*  Safety Attendants must be parked and begin donning their protective gear between one hour and one hour and fifteen minutes before their scheduled start time to comply with Defendants' scheduling and pre-shift activity requirements.  Likewise, Safety Attendants report that they typically do not finish doffing their protective gear until between forty-five minutes and one hour and fifteen minutes after their scheduled end time.

**Safety Attendants Incur Significant Expenses and Travel Long Distances to Work for Defendants, Without Compensation or Adequate Reimbursement**

63.     Defendants' job sites are in remote locations requiring significant travel. For each job, Safety Attendants are assigned to a project at a facility for one to three months.  After each job, Safety Attendants are laid off. These jobs may be in the same town as the Safety Attendant, or in a

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

different town.  When jobs are in-town – generally, within a range of 65-75 miles – Defendants do not provide any reimbursement for travel or daily per diems as a matter of policy, even though commuting to these remote locations often takes an hour or more each way.

64.     For out-of-town projects, Defendants provide a one-time travel reimbursement and daily per diem. However, Defendants do not inquire about the travel expenses in fact incurred, but instead tell Safety Attendants how much it will reimburse *before* the project even begins. This one-time travel reimbursement is set by Defendants.  Defendants set the one-time travel reimbursement by simply using the website "MapQuest" to determine the number of miles between the Safety's Attendant's residence and the jobsite, and providing the standard IRS mileage rate – nothing more. However, some Defendants artificially cap the amount of mileage they will reimburse, and refuse to provide the correct IRS rate.  No Defendant does anything to make up the difference as a matter of policy.  Moreover, when a Safety Attendant does not complete the full project – either by being fired or because the Safety Attendant voluntarily needed to leave – Defendants withhold travel reimbursement *in its entirety*.  Regardless, it is the overwhelming experience of Safety Attendants that the travel reimbursement provided is not sufficient to cover their travel expenses.

65.     Additionally, Safety Attendants are not compensated at an hourly rate or otherwise for the actual time it takes to travel these long distances.  In fact, documents provided by CertifiedSafety reveal Defendants' efforts to have Safety Attendants unlawfully waive their right to claim travel time compensation when dispatching Safety Attendants, confirming that their failure to compensate this time is knowing and willful.

66.     Likewise, the daily per diem does not come close to reimbursing Safety Attendants for daily living expenses.  As a preliminary matter, Defendants set the daily per diem – typically between $65 - $75 a day. On information and belief, Defendants do not conduct any investigations or audits to determine whether this amount is sufficient to cover necessarily-incurred expenses. In any event, it is plain that $70 a day is insufficient to cover all necessary living and lodging expenses. Hotel costs *alone* far exceed this amount.  Indeed, while even the ordinary hotel costs would not be covered by this per diem, hotels within driving distance of job sites often raise prices during

1   projects, knowing demand is high with an influx of remote workers. Nightly hotel costs are often

2   nearly double Safety Attendants' daily per diem. Thus, the per diem not only fails to cover hotel

3   costs, but it does not begin to cover other necessary daily living expenses, such as food, toiletries,

4   laundry costs, and the like.

5       67.     Additionally, Safety Attendants incur numerous expenses to perform their daily

6   duties that are not reimbursed. For example, Safety Attendants must purchase fire-retardant

7   protective gear, backpacks, radio holsters, gloves, earplugs, clipboards, pens, steel-toe boots, and a

8   watch.

9       68.     In sum, Safety Attendants:

10          a.  Are frequently denied compensation for all hours worked, including minimum

11              wage and overtime for work in excess of eight hours per day and forty hours per

12              week, as well as double time for work over twelve hours in one day and over

13              eight hours on the seventh consecutive day of work;

14          b.  Are not provided with premium pay for missed meal and rest breaks.    When

15              Plaintiff and putative Class members work more than ten hours per day, a second

16              meal period is regularly not made available to them. Putative Class members,

17              including Plaintiff, are not provided with premium pay for these missed meal

18              breaks; and

19          c.  Are denied reimbursement for work-related travel costs to putative Class and

20              Collective members, including Plaintiff. Defendants also do not reimburse

21              Plaintiff, Class, and Collective members for necessarily incurred business

22              expenses.

23      69.     Defendants are aware that Safety Attendants did not receive timely and compliant

24  meal and rest periods to which they were entitled, and that they were denied compensation for all

25  time worked.

26      70.     Defendants also do not provide putative Class members, including Plaintiff, accurate

27  itemized wage statements as required by California law. The wage statements that they are

28

provided are not accurate because they do not reflect the actual hours worked by Plaintiff and putative Class members.  Further, the wage statements are inaccurate because they do not include minimum wage for all hours worked, premium pay for missed breaks, overtime, and double time for all hours worked.

71.    Defendants often do not provide putative Class members with full payment of all wages owed at the end of employment.  As these workers are owed for off-the-clock work, unpaid overtime, and premium pay when their employment ends, and these amounts remained unpaid under Defendants' policies and practices, Defendants fail to pay all wages due upon termination. As a consequence, Defendants are subject to waiting time penalties.[3]

72.    Defendants require Plaintiff and Class members to work at least seven consecutive days, without a day of rest.

73.    Plaintiff works at several refinery sites in California and throughout the United States, including but not limited to in Washington, and their experience with regards to hours worked, off-the-clock work, meal and rest breaks, and unreimbursed business expenses are similar in each instance.  Plaintiff is informed, believes, and thereon alleges that Defendants' policies and practices have at all relevant times been similar for Safety Attendants, regardless of the location within the United States, including in California and Washington. Defendants' unlawful conduct has been widespread, repeated, and consistent throughout its work locations in the United States, including in California and Washington. Defendants knew or should have known that their policies and practices have been unlawful and unfair.

74.    Defendants' conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

---

[3] Defendants often promise bonuses for work on holidays as well as overtime and double time for these projects.  However, these promises often go unfulfilled, and the employees do not receive all pay owed to them.  Moreover, Defendants regularly do not consider these bonuses when calculating the hourly rate, overtime rate, and double time rate for Plaintiffs and putative Class and Collective members.  The system Defendants have in place to pay Plaintiffs and other Safety Attendants bonuses does not address this wage deficiency and only further exacerbates the inadequate wages they earn and are owed under the law because such bonuses are not included in the calculation of their regular rate and fail to account for overtime and premium pay owing to such employees.

**COLLECTIVE ALLEGATIONS UNDER THE FLSA**

75.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

76.    Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for failing to pay Plaintiff and Collective members for all hours worked, including minimum wage, wages at the agreed rate, and overtime compensation for all hours worked over 40 hours per week, liquidated damages, and attorneys' fees and costs under the FLSA.  The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former hourly, non-exempt Safety Attendants and Safety Foremen who worked for CertifiedSafety at a Shell Oil Company and/or Shell Oil Products Company LLC facility in the United States during the time period three years prior to the filing of this Complaint until the resolution of this action.

77.    Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims are similar to the claims of the Collective members.

78.    The Collective members are similarly situated, as they have substantially similar job duties and requirements and were subject to a common policy, practice, or plan that required them to perform work without compensation and required them to perform work at an unlawfully reduced payment rate, in violation of the FLSA.

79.    Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

80.    Plaintiff will fairly and adequately represent and protect the interests of Collective members.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

81.    The similarly situated Collective members are known to Defendants, are readily identifiable, and may be located through Defendants' records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated

1  | damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

2  | **CLASS ALLEGATIONS**

3  | 82.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

4  | herein.

5  | 83.     Plaintiff brings this case as a class action on behalf of himself and all others similarly

6  | situated pursuant to Federal Rule of Civil Procedure 23.

7  | 84.     The putative California Class that Plaintiff seeks to represent regarding pre-

8  | assignment training in California is defined as follows:

> All current and former Safety Attendants and Safety Foremen who completed training in California prior to any assignment by CertifiedSafety to work for any Shell Oil Company and/or Shell Oil Products Company LLC refinery during the time period April 21, 2013 until the resolution of this action (the "California Training Class").

85.     The putative California Class that Plaintiff seeks to represent regarding claims against CertifiedSafety and Shell for work at oil refineries in California is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any Shell Oil Company and/or Shell Oil Products Company LLC refinery in California during the time period April 21, 2013 until the resolution of this action (the "California Shell Class").

86.     The putative Washington Class that Plaintiff seeks to represent regarding claims against Shell and CertifiedSafety for work at oil refineries in Washington is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any Shell Oil Company and/or Shell Oil Products Company LLC refinery in Washington during the time period April 21, 2014 until the resolution of this action (the "Washington Class").

87.     This action has been brought and may properly be maintained as a class action under Rule 23:

> a.  **Numerosity**: The potential members of the putative Classes as defined are so numerous that joinder of all the members of the putative Classes is impracticable.

b. **Commonality**: There are questions of law and fact common to Plaintiff and the putative Classes that predominate over any questions affecting only individual members of the putative Classes. These common questions of law and fact include, but are not limited to:

i. Whether Defendants fail to compensate members of the putative Classes for all hours worked, including at minimum wage and as overtime compensation, in violation of the California Labor Code and Wage Orders, as well as Washington's Minimum Wage Act, Revised Code of Washington 49.46, *et seq.* ("WMWA");

ii. Whether Defendants fail to compensate members of the putative California Classes for all hours worked, including at minimum wage and as overtime compensation, in violation of Business and Professions Code §§ 17200 *et seq.*;

iii. Whether Defendants have a policy and/or practice of requiring members of the putative Classes to be in the control of and/or spend time primarily for the benefit of Defendants, and perform off-the-clock without compensation;

iv. Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to members of the putative Classes in violation of the California Labor Code and Wage Orders, as well as the WMWA;

v. Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative California Class members in violation of Business and Professions Code §§ 17200 *et seq.*;

vi. Whether Defendants fail to authorize and permit, make available, and/or provide members of the putative Classes with timely meal and rest periods

1    to which they were entitled in violation of the California Labor Code and

2    Wage Orders, as well as the WMWA;

3    vii.  Whether Defendants fail to authorize and permit, make available, and/or

4    provide putative California Class members with timely meal and rest

5    periods to which they were entitled in violation of Business and

6    Professions Code §§ 17200 *et seq.*;

7    viii. Whether Defendants fail to reimburse members of the putative Classes for

8    reasonable and necessary business expenses in violation of the California

9    Labor Code and Wage Orders, as well as the WMWA;

10   ix.   Whether Defendants fail to reimburse putative California Class members

11   for reasonable and necessary business expenses in violation of Business

12   and Professions Code §§ 17200 *et seq.*;

13   x.    Whether Defendants fail to provide members of the putative Classes with

14   timely, accurate itemized wage statements in violation of the California

15   Labor Code and Wage Orders, as well as the WMWA;

16   xi.   Whether Defendants fail to provide putative California Classes members

17   with timely, accurate itemized wage statements in violation of Business

18   and Professions Code §§ 17200 *et seq.*;

19   xii.  Whether Defendants fail to timely pay putative Class members for all

20   wages owed upon termination of employment in violation of the

21   California Labor Code, as well as the WMWA;

22   xiii. Whether Defendants fail to timely pay putative California Class members

23   for all wages owed upon termination of employment in violation of

24   Business and Professions Code §§ 17200 *et seq.*; and

25   xiv.  The proper formula for calculating restitution, damages and penalties

26   owed to Plaintiff and the Classes as alleged herein.

27

28

c. **Typicality**: Plaintiff's claims are typical of the claims of the Classes. Defendants' common course of conduct in violation of law as alleged herein has caused Plaintiff and members of the putative Classes to sustain the same or similar injuries and damages. Plaintiff's claims are therefore representative of and co-extensive with the claims of the Classes.

d. **Adequacy of Representation**: Plaintiff is a member of the Classes, do not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the Classes. Counsel representing Plaintiff is competent and experienced in litigating large employment class actions, including wage and hour classes. Plaintiff will fairly and adequately represent and protect the interests of members of the putative Classes.

e. **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the putative Classes is not practicable, and questions of law and fact common to the Classes predominates over any questions affecting only individual members of the Classes. Each member of the putative Classes have been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. In the alternative, the Classes may be certified because the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, and, in turn, would establish incompatible standards of conduct for Defendants.

/././

/././

/././

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 201,** *et seq.*
*(By Plaintiff against Shell Defendants)*

88.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

89.     The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

90.     At all times material herein, Plaintiff and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

91.     Shell is a covered employer required to comply with the FLSA's mandates.

92.     Shell has violated the FLSA with respect to Plaintiff and the Collective, by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage. Shell has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective.  29 U.S.C. § 211(c).

93.     Plaintiff and the Collective are victims of uniform and company-wide compensation policies. These uniform policies, in violation of the FLSA, have been applied to current and former non-exempt, hourly Safety Attendants and Safety Foremen of Shell, working throughout the United States.

94.     Plaintiff and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Shell has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

95.     Shell acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the

1  Collective are entitled to recover an award of liquidated damages in an amount equal to the amount

2  of unpaid overtime pay and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

3  96.    As a result of the aforesaid violations of the FLSA's provisions, pay, including

4  minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Shell

5  from Plaintiff and the Collective.  Accordingly, Shell is liable for unpaid wages, together with an

6  amount equal as liquidated damages, attorneys' fees, and costs of this action.

7  97.    Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

8

9  **SECOND CAUSE OF ACTION**
**Failure to Pay for All Hours Worked Pursuant to Labor Code § 204**
**For Training in California**

10  *(By Plaintiff against Defendants on behalf of the California Training Class)*

11  98.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

12  herein.

13  99.    This claim is brought by Plaintiff on behalf of the California Training Class against

14  CertifiedSafety and Shell.

15  100.    Defendants willfully engaged in and continue to engage in a policy and practice of

16  not compensating Plaintiff and putative Class members for all hours worked or spent under its

17  control.

18  101.    Defendants require Plaintiff and the putative California Training Class members to

19  attend pre-assignment training sessions in California. These trainings are completely locally in

20  California prior to the dispatch of Plaintiff and the putative California Training Class members to

21  refinery locations throughout the United States for assignments. Defendants require Plaintiff and

22  the putative California Training Class members to complete these trainings in order to accept the

23  applicable job assignments, and the training are required for each job assignment.

24  102.    These pre-assignment training sessions can last up to eight hours, but Plaintiff and

25  the putative California Training Class members are not paid for any of their time spent in them.

26  Additionally, Plaintiff and the putative California Training Class members are not compensated for

27  their expenses incurred traveling to and from the pre-assignment training sessions.  As a result,

28

Defendants fail to pay Plaintiff and the putative California Training Class members for all hours worked and fail to track their actual hours worked.

103.    Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

104.    Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

105.    Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

106.    IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

107.    Defendants require Plaintiff and the putative California Training Class members to work off-the-clock without compensation.  In other words, Plaintiff and the putative California Training Class members are forced to perform work for the benefit of Defendants without compensation.

108.    In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the putative California Training Class members with compensation for all time worked.  Defendants regularly fail to track the time they actually worked or to compensate them for hours worked.  Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff's and the putative California Training Class members' rights.  Plaintiff and the putative California Training Class are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

109.    As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

110.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wages Pursuant to California Labor
Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1
For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

111.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

112.    This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety and Shell.

113.    During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and require that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017, and at a rate of eleven dollars ($11.00) per hour commencing January 1, 2018.

114.    "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

115.    California Labor Code §1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

116.    Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages

1    unlawfully unpaid and interest thereon.

2        117.    Defendants have maintained policies and procedures which have created a working

3    environment where hourly employees are routinely compensated at a rate that is less than the

4    statutory minimum wage.  Plaintiff and the putative California Training Class members are required

5    to attend pre-assignment training but are not provided as compensation for any of the time that they

6    spend in this training.

7        118.    As a direct and proximate result of the unlawful acts and/or omissions of Defendants,

8    Plaintiff and putative California Training Class members have been deprived of minimum wages

9    in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated

10    damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194,

11    1194.2 and 1197.1.

12        119.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

13    **FOURTH CAUSE OF ACTION**
**Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802**
14    **For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*
15

16        120.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

17    herein.

18        121.    This claim is brought by Plaintiff on behalf of the California Training Class against

19    CertifiedSafety and Shell.

20        122.    Defendants do not reimburse Plaintiff and putative Class members for necessary

21    business expenditures.

22        123.    Labor Code § 2802 provides, in relevant part:

23            An employer shall indemnify his or her employee for all necessary
expenditures or losses incurred by the employee in direct consequence
24            of the discharge of his or her duties, or of his or her obedience to the
directions of the employer, even though unlawful, unless the
25            employee, at the time of obeying the directions, believed them to be
unlawful. … For the purposes of this section, the term "necessary
26            expenditures or losses" shall include all reasonable costs, including,
but not limited to, attorney's fees incurred by the employee enforcing
27            the rights granted by this section.

28

124.    Defendants regularly require Plaintiff and putative California Training Class members to pay out-of-pocket expenses for transportation and food when traveling to pre-assignment training sessions in California.    Defendants do not reimburse Plaintiff for travel expenses.

125.    Defendants are liable to Plaintiff and the putative California Training Class members for the unreimbursed expenses and civil penalties, with interest thereon.    Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

126.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226**
**For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

127.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

128.    This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety and Shell.

129.    Defendants do not provide Plaintiff and putative California Training Class members with accurate itemized wage statements as required by California law.

130.    Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the

1

2

3

> employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

4

131. The IWC Wage Orders also establishes this requirement. (See IWC Wage Order 16-

5

2001(6).)

6

132. Labor Code § 226(e) provides:

7

8

9

10

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

11

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

12

133. Defendants do not provide timely, accurate itemized wage statements to Plaintiff and

13

putative California Training Class members in accordance with Labor Code § 226(a) and the IWC

14

Wage Orders. As a result of the unpaid time for pre-assignment training, the wage statements

15

Defendants provide their employees, including Plaintiff and putative California Training Class

16

members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual

17

net wages earned.

18

134. Defendants are liable to Plaintiff and the putative California Training Class alleged

19

herein for the amounts described above in addition to the civil penalties set forth below, with

20

interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set

21

forth below, pursuant to Labor Code § 226(e).

22

135. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

23

24

25

**SIXTH CAUSE OF ACTION**
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**For Training in California**
*(By Plaintiff against Defendants on behalf of the California Training Class)*

26

136. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

27

herein.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

1    137.    This claim is brought by Plaintiff on behalf of the California Training Class against

2    CertifiedSafety and Shell.

3    138.    Defendants do not provide Plaintiff and putative California Training Class members

4    with their wages when due under California law after their employment with Defendants ends.

5    139.    Labor Code § 201 provides:

6        If an employer discharges an employee, the wages earned and unpaid
         at the time of discharge are due and payable immediately.
7

8    140.    Labor Code § 202 provides:

9        If an employee not having a written contract for a definite period quits
         his or her employment, his or her wages shall become due and payable
10       not later than 72 hours thereafter, unless the employee has given 72
         hours previous notice of his or her intention to quit, in which case the
11       employee is entitled to his or her wages at the time of quitting.

12   141.    Labor Code § 203 provides, in relevant part:

13       If an employer willfully fails to pay, without abatement or reduction,
         in accordance with Sections 201, 201.5, 202, and 205.5, any wages of
14       an employee who is discharged or who quits, the wages of the
         employee shall continue as a penalty from the due date thereof at the
15       same rate until paid or until an action therefor is commenced; but the
         wages shall not continue for more than 30 days.
16

17   142.    Plaintiff and putative California Training Class members left their employment with

18   Defendants during the statutory period, at which time Defendants owed them unpaid wages.  These

19   earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which

20   went unrecorded and/or uncompensated.

21   143.    Defendants willfully refuse to pay putative Class members all the wages that are due

22   and owing to them, in the form of uncompensated off-the-clock time, minimum wage, and

23   reimbursement for necessary business expenditures, upon the end of their employment as a result

24   of Defendants' willful failure to provide Plaintiff and the putative California Training Class

25   members with payment for all hours worked and reimbursement for travel for the required pre-

26   assignment training in California.  As a result of Defendants' actions, Plaintiff and putative Class

27   members have suffered and continue to suffer substantial losses, including lost earnings, and

28

1    interest.

2        144.    Defendants' willful failure to pay Plaintiff and putative California Training Class

3    members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a

4    result, Defendants are liable to Plaintiff and putative California Training Class members for all

5    penalties owing pursuant to Labor Code §§ 201-203.

6        145.    In addition, Labor Code § 203 provides that an employee's wages will continue as a

7    penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative

8    California Training Class members are entitled to penalties pursuant to Labor Code § 203, plus

9    interest.

10        146.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

11

12                              **SEVENTH CAUSE OF ACTION**
           **Failure to Pay for All Hours Worked Pursuant to Labor Code § 204**
13                           **For Work at Refineries in California**
           *(By Plaintiff against Defendants on behalf of the California Shell Class)*

14        147.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

15    herein.

16        148.    This claim is brought by Plaintiff on behalf of the California Shell Class against

17    CertifiedSafety and Shell.

18        149.    Defendants willfully engaged in and continue to engage in a policy and practice of

19    not compensating Plaintiff and putative Class members for all hours worked or spent in its control

20    while working at refineries in California.

21        150.    Defendants regularly schedule Plaintiff and the putative Class members to work

22    twelve-hour shifts.  However, Defendants intentionally and willfully require Plaintiff and the

23    putative Class members to complete additional work off-the-clock, in excess of twelve hours per

24    day.  For example, Defendants instruct Safety Attendants to clock in only after they have donned

25    personal protection equipment and to clock out before taking off their personal protection

26    equipment.  Defendants do not compensate Plaintiff and Class members for this time.  Moreover,

27    Defendants deduct thirty minutes of work for a meal period.  However, Plaintiff and putative Class

28

members routinely work through this meal period and are not compensated for that work. Additionally, Defendants require Plaintiff and the putative Class members to attend training sessions, not including pre-assignment training, which often involve lengthy travel to the training site, without compensation for the time spent in trainings or traveling to the trainings. As a result, Defendants fail to pay Plaintiff and the putative Class members for all hours worked and fail to track their actual hours worked.

151.    Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

152.    Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

153.    Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

154.    IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

155.    Defendants require Plaintiff and the Class to work off-the-clock without compensation. In other words, Plaintiff and the Class are forced to perform work for the benefit of Defendants without compensation.

156.    In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the putative Class with compensation for all time worked. Defendants regularly fail to track the time they actually worked or to compensate them for hours worked. Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff's and the putative Class

members' rights.  Plaintiff and the putative Classes are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

157.    As a proximate result of the aforementioned violations, Plaintiff and the putative Classes have been damaged in an amount according to proof at time of trial.

158.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay Minimum Wages Pursuant to California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1**
**For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Shell Class)*

159.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

160.    This claim is brought by Plaintiff on behalf of the California Shell Class against CertifiedSafety and Shell.

161.    During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and require that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017.

162.    "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

163.    California Labor Code §1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

164.    Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission,

1   an employee shall be entitled to recover liquidated damages in an amount equal to the wages

2   unlawfully unpaid and interest thereon.

3      165.   Defendants have maintained policies and procedures which have created a working

4   environment where hourly employees are routinely compensated at a rate that is less than the

5   statutory minimum wage while working at refineries in California.  Plaintiff and members of the

6   putative Classes frequently work time off-the-clock during rest and meal breaks and go

7   uncompensated for that time.  In addition, Safety Attendants are regularly uncompensated for time

8   spent donning and doffing safety equipment.

9      166.   As a direct and proximate result of the unlawful acts and/or omissions of Defendants,

10  Plaintiff and putative Class members have been deprived of minimum wages in an amount to be

11  determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus

12  interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and

13  1197.1.

14     167.   Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

### NINTH CAUSE OF ACTION
**Failure to Pay Overtime Wages Pursuant to Labor Code § 510**
**For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Shell Class)*

18     168.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

19  herein.

20     169.   This claim is brought by Plaintiff on behalf of the California Shell Class against

21  CertifiedSafety and Shell.

22     170.   Defendants do not compensate Plaintiff and putative Class members with the

23  appropriate overtime rate, including time and a half and double time, as required by California law,

24  for their work at refineries in California.  For example, Defendants do not consider bonuses when

25  determining what the overtime and double time rates should be for Plaintiff and putative Class

26  members.

27     171.   Labor Code § 510 provides as follows:

28

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

172.    The IWC Wage Order 16-2001(3)(A)(1) states:

The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

173.    Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

174.    Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

175.　Defendants regularly require Plaintiff and putative Class members to work in excess of eight hours per day and forty hours per week, but do not compensate them at an overtime rate for this work.　Furthermore, Defendants regularly do not compensate Plaintiff and the putative Class members at a double time rate for hours worked in excess of twelve hours each day or after eight hours on the seventh consecutive day of work.

176.　Plaintiff and putative Class members work overtime hours for Defendants without being paid overtime premiums in violation of the Labor Code, applicable IWC Wage Orders, and other applicable law.

177.　Defendants knowingly and willfully refuse to perform their obligation to compensate Plaintiff and the putative Class members for all premium wages for overtime work.　As a proximate result of the aforementioned violations, Defendants have damaged Plaintiff and the putative Class members in amounts to be determined according to proof at time of trial.

178.　Defendants are liable to Plaintiff and the Classes alleged herein for the unpaid overtime and civil penalties, with interest thereon.　Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

179.　Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

### TENTH CAUSE OF ACTION
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods
Pursuant to Labor Code §§ 226.7 and 512
For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Shell Class)*

180.　Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

181.　This claim is brought by Plaintiff on behalf of the California Shell Class against CertifiedSafety and Shell.

182.　Defendants routinely do not make meal periods available to Plaintiff and putative Class members working at refineries in California.　Despite long work days regularly lasting in excess of twelve hours, Plaintiff and putative Class members are often unable to take a meal break, are often prevented from timely taking a meal break, and are frequently interrupted during their

meal breaks.  When Plaintiff and putative Class members work more than ten hours in a day, Defendants often do not make a second meal period available to them.

183.    Plaintiff and putative Class members are not paid one hour of premium pay for the missed breaks.  Rather, Defendants deduct thirty minutes of pay on a daily basis for meal periods, even though Plaintiff and putative Class members are routinely denied compliant meal periods.

184.    Similar to meal periods, Defendants regularly fail to make rest periods available to Plaintiff and putative Class members.  Plaintiff's and putative Class members' schedules regularly prevent them from taking rest periods throughout the day.  When available, if ever, they are often not compliant.  Instead, they are generally untimely or short.  Plaintiff and putative Class members do not receive premium pay for their missed breaks as required by California law.

185.    Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendants to authorize and permit meal and rest periods to their employees.  Labor Code §§ 226.7 and 512 and the Wage Orders prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes. Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees their full wages during those rest periods.  Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

186.    Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted.  Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

187.    Despite these requirements, Defendants knowingly and willfully refuse to perform

their obligations to authorize and permit and/or make available to Plaintiff and the Classes the ability to take the off-duty meal and rest periods to which they were entitled. Defendants fail to pay Plaintiff and the Classes one hour of pay for each off-duty meal and/or rest periods that they are denied. Defendants' conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the putative Classes are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

188. As a proximate result of the aforementioned violations, Plaintiff and the putative Classes have been damaged in an amount according to proof at time of trial.

189. Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

## ELEVENTH CAUSE OF ACTION
**Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802
For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Shell Class)*

190. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

191. This claim is brought by Plaintiff on behalf of the California Shell Class against CertifiedSafety and Shell.

192. Defendants do not reimburse Plaintiff and putative Class members for necessary business expenditures incurred while working at refineries in California.

193. Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

194. Defendants regularly require Plaintiff and putative Class members to pay out-of-pocket expenses for transportation, lodging, and food when traveling to assigned work sites.

Defendants often promise to reimburse Plaintiff for these per diems and travel expenses, but often fail to do so.  Additionally, Defendants attempt to have Plaintiff and putative Class members illegally waive their right to reimbursement for travel expenses.  Even when Defendants reimburse Plaintiff and Class members for these expenses, the amount reimbursed are often insufficient to cover the total cost of travel.

195.    Furthermore, Defendants regularly require Plaintiff and putative Class members to pay out-of-pocket expenses for personal protective equipment, including but not limited to boots, and for the cost of washing this equipment.  Defendants do not reimburse Plaintiff and the putative Class members for these expenditures.

196.    Defendants are liable to Plaintiff and the putative Class members for the unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

197.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**TWELFTH CAUSE OF ACTION**
**Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226**
**For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Shell Class)*

198.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

199.    This claim is brought by Plaintiff on behalf of the California Shell Class against CertifiedSafety and Shell.

200.    Defendants do not provide Plaintiff and putative Class members with accurate itemized wage statements as required by California law for their work at refineries in California.

201.    Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section

515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

202.    The IWC Wage Orders also establishes this requirement.  (See IWC Wage Order 16-2001(6).)

203.    Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

204.    Defendants do not provide timely, accurate itemized wage statements to Plaintiff and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.  The wage statements Defendants provide their employees, including Plaintiff and putative Class members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

205.    Defendants are liable to Plaintiff and the putative Classes alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

206.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

/././

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

**THIRTEENTH CAUSE OF ACTION**
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**For Work at Refineries in California**
*(By Plaintiff against Defendants on behalf of the California Shell Class)*

207.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

208.     This claim is brought by Plaintiff on behalf of the California Shell Class against CertifiedSafety and Shell.

209.     Defendants do not provide Plaintiff and putative Class members with their wages for their work at refineries in California when due under California law after their employment with Defendants ends.

210.     Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

211.     Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

212.     Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

213.     Plaintiff and putative Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

214.     Defendants willfully refuse to pay putative Class members all the wages that are due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, overtime,

1    meal and rest period premium pay, and reimbursement for necessary business expenditures upon

2    the end of their employment as a result of Defendants' willful failure to provide Plaintiff and the

3    putative Class members with payment for all hours worked, overtime, and meal and rest breaks.

4    As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue

5    to suffer substantial losses, including lost earnings, and interest.

6         215.    Defendants' willful failure to pay Plaintiff and putative Class members the wages

7    due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendants are

8    liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§

9    201-203.

10        216.    In addition, Labor Code § 203 provides that an employee's wages will continue as a

11   penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative

12   Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

13        217.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

14

15                            **FOURTEENTH CAUSE OF ACTION**
                       **Failure to Pay Minimum Wage (WMWA 49.46.090, RCW 49.12.150)**
                                   **For Work at Refineries in Washington**

16                      *(By Plaintiff against Defendants on behalf of the Washington Class)*

17        218.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

18   herein.

19        219.    This claim is brought by Plaintiff on behalf of the Washington Class against

20   CertifiedSafety and Shell.

21        220.    As detailed above, Defendants fail to compensate Plaintiff and putative Class

22   members with at least the minimum wage for all hours worked.

23        221.    During the applicable statutory period, WMWA 49.46.020(1)(a) was in full force and

24   effect and required that Plaintiff and putative Class members receive the minimum wage for all

25   hours worked at the rate of nine dollars thirty-two cents ($9.32) per hour commencing January 1,

26   2014, at the rate of nine dollars forty-seven cents ($9.47) per hour commencing July 1, 2015, at the

27   rate of eleven dollars ($11.00) per hour commencing January 1, 2017, at the rate of eleven dollars

28

and fifty cents ($11.50) per hour commencing January 1, 2018, and at the rate of twelve dollars ($12.00) per hour commencing January 1, 2019.

222.    Washington Administrative Code ("WAC") 296-126-002 defines hours worked as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place.

223.    WMWA 49.46.090(1) provides, in relevant part:

> Any employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount due to such employee under this chapter, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.

224.    RCW 49.12.150 also provides:

> If any employee shall receive less than the legal minimum wage, except as hereinbefore provided in RCW 49.12.110, said employee shall be entitled to recover in a civil action the full amount of the legal minimum wage as herein provided for, together with costs and attorney's fees to be fixed by the court, notwithstanding any agreement to work for such lesser wage. In such action, however, the employer shall be credited with any wages which have been paid upon account.

225.    RCW 49.48.030 allows the court to grant reasonable attorney's fees "[i]n any action in which any person is successful in recovering judgment for wages or salary owed" to him or her.

226.    Because of Defendants' policies and practices with regard to compensating Plaintiff and putative Class members, Defendants have failed to pay minimum wages as required by law. Plaintiff and putative Class members frequently perform work for which they are compensated below the statutory minimum.

227.    Plaintiff and putative Class members have been deprived of minimum wages in an amount to be proven at trial, and are entitled to a recovery of such amount, plus interest thereon, attorneys' fees, and costs of suit pursuant to RCW 49.46.090 and 49.48.030.

228.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

/././

/././

### FIFTEENTH CAUSE OF ACTION
#### Failure to Pay Overtime Wages (WMWA 49.46.130)
#### For Work at Refineries in Washington
*(By Plaintiff against Defendants on behalf of the Washington Class)*

229.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

230.    This claim is brought by Plaintiff on behalf of the Washington Class against CertifiedSafety and Shell.

231.    As detailed above, Defendants fail to compensate Plaintiff and putative Class members with at least the minimum wage for all hours worked.

232.    Defendants do not compensate Plaintiff and putative Class members with the appropriate overtime rate for work performed in excess of forty hours per week.

233.    WMWA 49.46.130(1) provides that work performed in excess of forty hours in a given week must be compensated at a rate of no less than one and one-half times the regular rate of pay for an employee.

234.    Wages are defined in the WMWA 49.46.010(7) as "compensation due to an employee by reason of employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to such deductions, charges, or allowances as may be permitted by rules of the director."

235.    All such wages are subject to Washington's overtime requirements, including those set forth above.

236.    WMWA 49.46.090(1) provides, in relevant part:

> Any employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount due to such employee under this chapter, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.

237.    RCW 49.48.030 allows the court to grant reasonable attorney's fees "[i]n any action in which any person is successful in recovering judgment for wages or salary owed" to him or her.

238.    Defendants regularly require Plaintiff and putative Class members to work in excess

1   of forty hours per week, but do not compensate them at an overtime rate for all of this work.

2   Furthermore, as detailed above, Defendants routinely require Plaintiff and putative Class members

3   to work, off the clock, which increases the amount of overtime compensation to which they are due,

4   but do not receive.

5      239.    Plaintiff and putative Class members have worked overtime hours for Defendants

6   without being paid overtime premiums in violation of the WMWA, and other applicable laws of

7   the state of Washington.

8      240.    Defendants have knowingly and willfully refused to perform their obligation to

9   compensate Plaintiff and the putative Class members for all premium wages for overtime work.

10     241.    As a proximate result of the aforementioned violations, Defendants have damaged

11  Plaintiff and the putative Class members in amounts to be determined according to proof at time of

12  trial.  Plaintiff is entitled to recover overtime wages owed, including interest thereon, and attorneys'

13  fees and costs pursuant to RCW 49.46.090 and 49.48.030.

14     242.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

15                             **SIXTEENTH CAUSE OF ACTION**
            **Failure to Authorize and Permit and/or Make Available Meal and Rest Breaks**
16                **(RCW 49.12.020) For Work at Refineries in Washington**

17     243.    (By Plaintiff against Defendants on behalf of the Washington Class)

18     244.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

19  herein.

20     245.    This claim is brought by Plaintiff on behalf of the Washington Class against

21  CertifiedSafety and Shell.

22     246.    As detailed above, Defendants fail to compensate Plaintiff and putative Class

23  members with at least the minimum wage for all hours worked.

24     247.    RCW 49.12.010 provides:

25          The welfare of the state of Washington demands that all employees be
            protected from conditions of labor which have a pernicious effect on
26          their health.  The state of Washington, therefore, exercising herein its
            police and sovereign power declares that inadequate wages and
27          unsanitary conditions of labor exert such pernicious effect.

28

248.    RCW 49.12.020 provides that "[i]t shall be unlawful to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health."

249.    Pursuant to RCW 49.12.005(5) and WAC 296-126-002(9), conditions of labor "means and includes the conditions of rest and meal periods" for employees.

250.    WAC 296-126-092 provides:

> (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
> (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.
> (5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

251.    In the present case, Plaintiff and putative Class members are routinely required to work through rest and meal periods. When Plaintiff and putative Class members do receive a meal or rest break, these breaks generally are on duty.

252.    By actions alleged above, Defendants have violated WAC 296-126-092.  This, in turn, constitutes a violation of RCW 49.12.010 and RCW 49.12.020.

253.    RCW 49.12.170 provides, in relevant part:

> any employer employing any person for whom a minimum wage or standards, conditions, and hours of labor have been specified, at less than said minimum wage, or under standards, or conditions of labor or at hours of labor prohibited by the rules and regulations of the director … shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be punished by a fine of not less than twenty-five dollars nor more than one thousand dollars.

254.    As a result of these unlawful acts, Plaintiff and the Classes have been deprived of

1  compensation in amounts to be determined at trial, and Plaintiff and the Classes are entitled to the

2  recovery of such damages, including interest thereon, civil penalties, and attorneys' fees and costs

3  under RCW 49.48.030 and 49.12.170.

4      255.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

5

6                    **SEVENTEENTH CAUSE OF ACTION**
                    **Unpaid Wages On Termination (RCW 49.48)**
7                    **For Work at Refineries in Washington**
                    *(By Plaintiff against Defendants on behalf of the Washington Class)*

8      256.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

9  herein.

10     257.    This claim is brought by Plaintiff on behalf of the Washington Class against

11 CertifiedSafety and Shell.

12     258.    As detailed above, Defendants fail to compensate Plaintiff and putative Class

13 members with at least the minimum wage for all hours worked.

14     259.    Under RCW 49.46.090, employers must pay employees all wages to which they are

15 entitled under the Washington Minimum Wage Act. If the employer fails to do so, RCW 49.46.090

16 requires that the employer pay the employees the full amount of the statutory minimum wage rate

17 less any amount actually paid to the employee.

18     260.    By the actions alleged above, Defendants have violated the provisions of RCW

19 49.46.090 and the WMWA by failing to pay any wage whatsoever to Plaintiff and putative Class

20 members when they work off the clock, miss all or part of their breaks, and are deprived of correct

21 overtime compensation.

22     261.    As a result of the unlawful acts of Defendants, Plaintiff and the putative Classes have

23 been deprived of regular and overtime compensation in an amount to be determined at trial.

24 Pursuant to RCW 49.46.090 and 49.48.030, Plaintiff and the Classes are entitled to recover

25 attorneys' fees and costs of suit.

26     262.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

27 /././

28

**EIGHTEENTH CAUSE OF ACTION**
**Willful Refusal to Pay Wages (RCW 49.52.050)**
**For Work at Refineries in Washington**
*(By Plaintiff against Defendants on behalf of the Washington Class)*

263.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

264.    This claim is brought by Plaintiff on behalf of the Washington Class against CertifiedSafety and Shell.

265.    As detailed above, Defendants fail to compensate Plaintiff and putative Class members with at least the minimum wage for all hours worked.

266.    RCW 49.52.050(2) provides that any employer or agent of any employer who "[w]illfully and with intent to deprive the employee of any party of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" shall be guilty of a misdemeanor.

267.    RCW 49.52.070 provides that any employer who violates the foregoing statute shall be liable in a civil action for twice the amount of wages withheld, together with costs of suit and reasonable attorney fees.

268.    An employer's nonpayment of wages is willful and made with intent "when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment."  Wingert v. Yellow Freight Sys., Inc. 146 Wash.2d 841, 849 (2002), quoting Chelan Cnty. Deputy Sheriffs' Ass'n v. Chelan County, 109 Wash.2d 282, 300 (1987).

269.    In the present case, Defendants intentionally fail to pay all wages owed to Plaintiff and putative Class members, including minimum wage and overtime wages, by requiring Plaintiff and putative Class members to work during meal and rest periods.   Defendants knew or should have known that their employment policies violate Washington law, and their failure to pay wages owed to Plaintiff and putative Class members was "willful" under RCW 49.52.050(2).

270.    Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

/./././

/././

**NINETEENTH CAUSE OF ACTION**
**Violation of Washington's Consumer Protection Act (RCW 19.86)**
**For Work at Refineries in Washington**
*(By Plaintiff against Defendants on behalf of the Washington Class)*

271.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

272.    This claim is brought by Plaintiff on behalf of the Washington Class against CertifiedSafety and Shell.

273.    As detailed above, Defendants fail to compensate Plaintiff and putative Class members with at least the minimum wage for all hours worked.

274.    Defendants have engaged in unfair or deceptive acts or practices when they: (i) fail to pay Plaintiff and Class members wages for off-the-clock work; (ii) prevent Plaintiff and Class members from taking rest and meal breaks; (iii) fail to pay Plaintiff and Class members for the periods during which their rest and meal breaks were interrupted; (iv) fail to pay Plaintiff and Class members for overtime worked; (v) violate RCW 49.46.30; (vi) violate WAC 296-126-023; and (vii) violate WAC 296-126-092 and 296-125-0287.

275.    Defendants' unfair or deceptive acts or practices repeatedly occur in Defendants' trade or business, and are capable of deceiving a substantial portion of the public.

276.    As a direct and proximate cause of Defendants' unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual damages, in that Plaintiff and Class members are wrongfully denied the payment of wages, are forced to work off the clock, and are prevented from taking rest and meal breaks.

277.    As a result of Defendants' unfair and deceptive practices, Plaintiff and the Classes are entitled, pursuant to RCW 19.86.090, to recover treble damages, reasonable attorneys' fees, and costs.

278.    Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**TWENTIETH CAUSE OF ACTION**
**Violation of California Business and Professions Code § 17200,** *et seq.*

279.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

1    herein.

2        280.    This claim is brought by Plaintiff on behalf of the California Training Class and the

3    California Shell Class against CertifiedSafety and Shell.

4        281.    California Business and Professions Code § 17200, et seq. (the "UCL") prohibits

5    unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

6        282.    Business and Professions Code § 17204 allows a person injured by the unfair business

7    acts or practices to prosecute a civil action for violation of the UCL.

8        283.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce

9    minimum labor standards in order to ensure employees are not required to work under substandard

10   and unlawful conditions, and to protect employers who comply with the law from those who attempt

11   to gain competitive advantage at the expense of their workers by failing to comply with minimum

12   labor standards.

13       284.    Defendants have committed acts of unfair competition as defined by the UCL, by

14   engaging in the unlawful, unfair, and fraudulent business acts and practices described in this

15   Complaint, including, but not limited to:

16            a.   violations of Labor Code § 1194 and IWC Wage Order 16-2001 pertaining to

17                 payment of wages, including minimum wage, for all hours worked;

18            b.   violations of Labor Code § 510 and Wage Order 16-2001 pertaining to overtime;

19            c.   violations of Labor Code §§ 226.7 and 512 and Wage Order 16-2001 pertaining

20                 to meal and rest breaks;

21            d.   violations of Labor Code § 226 regarding accurate, timely itemized wage

22                 statements;

23            e.   violations of Labor Code § 2802 regarding indemnification for necessary

24                 business expenditures; and

25            f.   violations of Labor Code §§ 201-203.

26       285.    The violations of these laws and regulations, as well as of the fundamental California

27   public policies protecting wages, serve as unlawful predicate acts and practices for

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

1    purposes of Business and Professions Code §§ 17200 et seq.

2    286.    The acts and practices described above constitute unfair, unlawful, and fraudulent

3    business practices, and unfair competition, within the meaning of Business and Professions Code

4    §§ 17200 et seq.  Among other things, the acts and practices have taken from Plaintiff and the Class

5    wages rightfully earned by them, while enabling Defendants to gain an unfair competitive

6    advantage over law-abiding employers and competitors.

7    287.    Business and Professions Code § 17203 provides that a court may make such orders

8    or judgments as may be necessary to prevent the use or employment by any person of any practice

9    which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent

10    Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged

11    above.

12    288.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff

13    and the Class members have suffered a loss of money and property, in the form of unpaid wages

14    which are due and payable to them.

15    289.    Business and Professions Code § 17203 provides that the Court may restore to any

16    person in interest any money or property which may have been acquired by means of such unfair

17    competition.  Plaintiff and the Classes are entitled to restitution pursuant to Business and

18    Professions Code § 17203 for all wages and payments unlawfully withheld from employees during

19    the four-year period prior to the filing of this Complaint.  Plaintiff's success in this action will

20    enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of

21    himself as well as others similarly situated.  Plaintiff and putative Class members seek and are

22    entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing

23    to them.

24    290.    Plaintiff herein takes upon himself enforcement of these laws and lawful claims.

25    There is a financial burden involved in pursuing this action, the action is seeking to vindicate a

26    public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to

27    pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to

28

1   Code of Civil Procedure §1021.5 and otherwise.

2       291.   Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

3

4   **TWENTY-FIRST CAUSE OF ACTION**
**Penalties Pursuant to § 2699(a) of the Private Attorneys General Act**

5       292.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

6   herein.

7       293.   This claim is brought by Plaintiff on behalf of the California Training Class and the

8   California Shell Class against CertifiedSafety and Shell.

9       294.   Labor Code § 2699(a) provides:

10       Notwithstanding any other provision of law, any provision of this
code that provides for a civil penalty to be assessed and collected by

11   the Labor and Workforce Development Agency or any of its
departments, divisions, commissions, boards, agencies or employees,

12   for a violation of this code, may, as an alternative, be recovered
through a civil action brought by an aggrieved employee on behalf of

13   himself or herself and other current or former employees.

14       295.   Labor Code § 203 provides, in relevant part:

15       If an employer willfully fails to pay, without abatement or reduction,

16   in accordance with Sections 201, 201.5, 202, and 205.5, any wages of
an employee who is discharged or who quits, the wages of the

17   employee shall continue as a penalty from the due date thereof at the
same rate until paid or until an action therefore is commenced; but the

18   wages shall not continue for more than 30 days.

19       296.   Labor Code § 226(a) provides:

20       Every employer shall, semimonthly or at the time of each payment of
wages, furnish each of his or her employees, either as a detachable

21   part of the check, draft, or voucher paying the employee's wages, or
separately when wages are paid by personal check or cash, an accurate

22   itemized statement in writing showing (1) gross wages earned, (2)
total hours worked by the employee, except for any employee whose

23   compensation is solely based on a salary and who is exempt from
payment of overtime under subdivision (a) of Section 515 or any

24   applicable order of the Industrial Welfare Commission, (3) the
number of piece-rate units earned and any applicable piece rate if the

25   employee is paid on a piece-rate basis, (4) all deductions, provided
that all deductions made on written orders of the employee may be

26   aggregated and shown as one item, (5) net wages earned, (6) the
inclusive dates of the period for which the employee is paid, (7) the

27   name of the employee and his or her social security number, (8) the
name and address of the legal entity that is the employer, and (9) all

28

54
CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

297.    Labor Code § 551 provides:

Every person employed in any occupation of labor is entitled to one day's rest therefrom in seven.

298.    Labor Code § 552 provides:

No employer of labor shall cause his employees to work more than six days in seven.

299.    Labor Code § 558(a) provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

300.    Plaintiff seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, as alleged above, to timely pay all wages owed to Plaintiff and each putative Class member in compliance with Labor Code §§ 201-202 in the amounts established by Labor Code § 203. Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 203, as prayed for herein.

301.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure

by Defendants, alleged above, to provide Plaintiff and each Class member an accurate, itemized wage statement in compliance with Labor Code § 226(a) in the amounts established by Labor Code § 226(e).  Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 226(e), as prayed for herein.

302.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, alleged above, to provide Plaintiff and each Class member compliant meal and rest periods in compliance with Labor Code § 512.

303.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each violation of Labor Code § 510, alleged above, as well as any provision regulating hours and days of work in any order of the IWC.

304.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, alleged above, to provide Plaintiff and each Class member one day of rest therefrom seven days of work in compliance with Labor Code §§ 551 and 552.

305.    Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff provided the Labor and Workforce Development Agency ("LWDA") with notice of his intention to file this claim.  Sixty-five calendar days have passed without notice from the LWDA.  Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

306.    Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved employees, and himself as set forth in Labor Code § 2699(g)(i).

307.    Defendants are liable to Plaintiff, the putative Class, and the State of California for the civil penalties set forth in this Complaint, with interest thereon.  Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

308.    Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter provided.

### TWENTY-SECOND CAUSE OF ACTION
**Penalties Pursuant to § 2699(f) of the Private Attorneys General Act**

309.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth

1    herein.

2        310.    This claim is brought by Plaintiff on behalf of the California Training Class and the

3    California Shell Class against CertifiedSafety and Shell.

4        311.    Labor Code § 2699(f) provides:

5            For all provisions of this code except those for which a civil penalty
             is specifically provided, there is established a civil penalty for a
6            violation of these provisions, as follows: . . . (2) If, at the time of the
             alleged violation, the person employs one or more employees, the civil
7            penalty is one hundred dollars ($100) for each aggrieved employee
             per pay period for the initial violation and two hundred dollars ($200)
8            for each aggrieved employee per pay period for each subsequent
             violation.
9

10       312.    To the extent than any violation alleged herein does not carry penalties under Labor

11   Code § 2699(a), Plaintiff seeks civil penalties pursuant to Labor Code § 2699(f) for Plaintiff and

12   Class members each pay period in which he or she was aggrieved, in the amounts established by

13   Labor Code § 2699(f).

14       313.    Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff has provided the LWDA

15   with notice of his intention to file this claim.  Sixty-five calendar days have passed without notice

16   from the LWDA.  Plaintiff satisfied the administrative prerequisites to commence this civil action

17   in compliance with § 2699.3(a).

18       314.    Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved

19   employees, and themselves as set forth in Labor Code § 2699(g)(i).

20       315.    Defendants are liable to Plaintiff, the putative Class, and the State of California for

21   the civil penalties set forth in this Complaint, with interest thereon.  Plaintiff is also entitled to an

22   award of attorneys' fees and costs as set forth below.

23       316.    Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter

24   provided.

25   /././

26   /././

27   /././

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

1

2                                  **PRAYER FOR RELIEF**

3       WHEREFORE, Plaintiff prays for relief as follows:

4       a)    Damages and restitution according to proof at trial for all unpaid wages and other

5             injuries, as provided by the FLSA, California Labor Code, WMWA, and other laws of

6             the States of California and Washington;

7       b)    For a declaratory judgment that Defendants have violated the FLSA, California Labor

8             Code, IMWL, IWPCA, the laws of the States of California and Washington, and public

9             policy as alleged herein;

10      c)    For a declaratory judgment that Defendants have violated the UCL, California Business

11            and Professions Code § 17200 *et seq.*, as a result of the aforementioned violations of the

12            California Labor Code and of California public policy protecting wages;

13      d)    For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants,

14            their officers, agents, and all those acting in concert with them from committing in the

15            future those violations of law herein alleged;

16      e)    For an equitable accounting to identify, locate, and restore to all current and former

17            employees the wages they are due, with interest thereon;

18      f)    For an order awarding Plaintiff and the Classes and Collective members compensatory

19            damages, including lost wages, earnings, liquidated damages, and other employee

20            benefits, restitution, recovery of all money, actual damages, and all other sums of money

21            owed to Plaintiff and members of the Classes, together with interest on these amounts,

22            according to proof;

23      g)    For an order awarding Plaintiff, Classes, and members of the Collective civil penalties

24            pursuant to the FLSA, California Labor Code, WMWA, and the laws of the States of

25            California and Washington, with interest thereon;

26      h)    For an award of reasonable attorneys' fees as provided by the FLSA, California Labor

27            Code, California Code of Civil Procedure § 1021.5, WMWA, the laws of the States of

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Harold Jones v. CertifiedSafety, Inc., et al.*

California and Washington, and/or other applicable law;

i) For all costs of suit;

j) For interest on any damages and/or penalties awarded, as provided by applicable law; and

k) For such other and further relief as this Court deems just and proper.

Dated: March 18, 2019                   Respectfully submitted,

                                        */s/ Carolyn H. Cottrell*
                                        Carolyn H. Cottrell
                                        David C. Leimbach
                                        Michelle S. Lim
                                        Scott L. Gordon
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY
                                        WOTKYNS LLP

                                        Attorneys for Plaintiff, the Putative Classes, and Collective

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

Dated: March 18, 2019                   Respectfully submitted,

                                        */s/ Carolyn H. Cottrell*
                                        Carolyn H. Cottrell
                                        David C. Leimbach
                                        Michelle S. Lim
                                        Scott L. Gordon
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY
                                        WOTKYNS LLP

                                        Attorneys for Plaintiff, the Putative Classes and Collective